UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STACEY, M.[1],

                                      Plaintiff,      19-CV-275-FPG

v.                                              DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.

## INTRODUCTION

On September 9, 2014, Plaintiff filed a Title II application for disability insurance benefits ("DIB") alleging disability beginning on April 16, 2013. Tr.[2] at 168-73. After the application was initially denied, Plaintiff timely requested a hearing. Tr. 111. On July 13, 2017, she appeared with her attorney, Jeanne Murray, and testified before Administrative Law Judge Roxanne Fuller ("the ALJ"). Tr. 40-76. A Vocational Expert ("VE"), Bassey Duke, also testified at the hearing. Tr. 70-76. The ALJ issued an unfavorable decision on September 11, 2017. Tr. 20-31. Plaintiff then requested review by the Appeals Council, which the Council granted on October 3, 2017. Tr. 9-11, 163-66. On January 7, 2019, the Appeals Council issued a partially unfavorable decision, making it the final decision of the Commissioner.[3] Tr. 1-9. Subsequently, Plaintiff brought this

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by her first name and last initial.

[2] "Tr." refers to the administrative record in the matter. ECF No. 9.

[3] The Appeals Council disagreed with the ALJ's findings that Plaintiff's period of substantial gainful activity ran from July 1, 2015 through September 11, 2017, the date of the decision. Tr. 4-6. It determined that Plaintiff's period of substantial gainful activity instead ran through January 31, 2017, however, because it did not find any change in Plaintiff's medical condition as of February 1, 2017, the Appeals Council ultimately adopted the ALJ's findings that Plaintiff was not disabled from January 1, 2017 through September 11, 2017, the date of the decision. *Id.* The Appeals Council also did not adopt the ALJ's findings that Plaintiff could perform light, unskilled jobs of a price marker and mail room sorter because both jobs exceeded Plaintiff's residual functional capacity identified by the ALJ. *Id.*

1

action pursuant to Title II of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied her DIB application.[4] ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 12, 13. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's motion is GRANTED, and the Commissioner's decision is AFFIRMED.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or

---

[4] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

2

combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above and determined that Plaintiff met the insured status requirements of the SSA through December 31, 2020. Tr. 22. At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from April 16, 2013, the alleged onset date, through June 30, 2015, but had engaged in substantial gainful activity from July 1, 2015 through September 11, 2017, the date of the decision.[5] Tr. 22. At Step Two, the ALJ found that Plaintiff suffered from one severe impairment: degenerative disc disease. *Id.* She also found that Plaintiff's mental impairment was a non-severe impairment. Tr. 23-25. At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing of impairments. Tr. 25. The ALJ then determined that Plaintiff retained the RFC to perform sedentary work, except that she could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, stoop, crouch, kneel, crawl; frequently handle and finger objects with both hands; and could occasionally be exposed to moving mechanical parts, unprotected heights, and operate a motor vehicle. *Id.*

At Step Four of the sequential analysis, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 29. The ALJ then proceeded to Step Five, where she concluded that there were jobs available in significant numbers in the national economy that a person of Plaintiff's

---

[5] As previously noted, the Appeals Council disagreed with the ALJ's findings that Plaintiff's period of substantial gainful activity ran from July 1, 2015 through September 11, 2017, the date of the decision, and, instead, determined that it ran through January 31, 2017. Tr. 4-6.

4

age, education, and work experience could perform. Tr. 230. Specifically, the ALJ found that Plaintiff could work as a price marker and mail room sorter.[6] Tr. 30.

## II. Analysis

Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ improperly evaluated medical opinions contained in the record and did not account for Plaintiff's subjective complaints of pain.[7] ECF No. 12-1 at 13-22. The Court does not find Plaintiff's arguments persuasive for the following reasons.

Generally, the regulations provide that the ALJ is tasked with making an RFC determination based on the review of the entire record. *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . . , your [RFC] . . . , or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.") That is why, while reviewing the denial of application for benefits, the Court must keep "in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (internal citations omitted).

---

[6] The Appeals Council did not accept the ALJ's finding that Plaintiff could perform work of a price marker and mail room sorter because both jobs required light exertion, which was inconsistent with Plaintiff's RFC of sedentary work identified by the ALJ. Tr. 4-6. However, because the VE testified that a claimant would be able to perform sedentary jobs of a document preparer, data entry clerk, and clerical sorter, all of which exist in significant numbers in the national economy, the Appeals Council adopted the VE's testimony, and determined that Plaintiff could perform such sedentary jobs. The Appeals Council ultimately adopted the ALJ's findings that Plaintiff was not disabled. Tr. 5.

[7] Because Plaintiff challenges the ALJ's findings with respect to her physical RFC, the Court will not address the mental portion of Plaintiff's RFC. Additionally, in her reply, Plaintiff appears to make an argument about Plaintiff's sitting limitations referencing an opinion of Dr. Toor. ECF No. 14 at 2-3. The Court will not address this argument as the record neither contains an opinion issued by Dr. Toor, nor does the RFC determination provide for any sitting restriction.

5

Here, the ALJ appropriately concluded that Plaintiff's degenerative disc impairment was not disabling. In arriving at this opinion the ALJ relied on the opinions of Dr. Siddiqui and Dr. Wild to formulate Plaintiff's RFC. Tr. 28. She afforded great weight to Dr. Siddiqui's consultative opinion because his findings that Plaintiff had mild limitations in ability to climb, push, pull, or carry heavy objects, were consistent with the record. *Id.* As to Dr. Wild's opinion, the ALJ also afforded it little weight because the level of severity of Plaintiff's functioning limitations identified by Dr. Wild was inconsistent with the level of treatment he recommended for Plaintiff and because it contained disability findings reserved for the Commissioner. *Id.* The Court does not find any error in the weight assigned to each opinion, and finds that the ALJ's analysis was supported by substantial evidence and the record as a whole.

First, Plaintiff's argument that the ALJ should not have primarily relied on Dr. Siddiqui's opinion because he was a one-time consultative examiner ignores the well-established practice in this Circuit where courts have repeatedly held that an ALJ may rely on the opinion of a consultative examiner to determine claimant's RFC. *See, e.g., Trepanier v. Comm'r of Soc Sec. Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018) (summary order) (ALJ's RFC finding was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner"); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence." (internal citation omitted)). Moreover, when the record contains sufficient evidence from which the ALJ can access the claimant's RFC, an ALJ's reliance on a formal medical opinion may not be even necessary. *See, e.g., Monroe v. Comm'r of Soc. Sec*, 676 F. App'x 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on treatment notes and activities of daily living to formulate the RFC assessment without the benefit of a medical opinion); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (even though the ALJ did not credit findings of consultative

6

examiner, the RFC determination was, nonetheless, consistent with the examiner's analysis and the other treatment records). Here, even though Dr. Siddiqui was a consultative examiner who did not have a long-standing treating relationship with Plaintiff, he, nevertheless, conducted a thorough examination of Plaintiff's physical abilities and considered her history of neck and back pain, and, as a result, opined that Plaintiff would be mildly limited in her ability to climb, push, pull, or carry heavy objects . Tr. 547-50. Notably, despite Plaintiff's complaints of disabling neck and low back pain, Dr. Siddiqui found Plaintiff to have a full range of motion in her cervical and lumbar spine, and full strength and range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles during the examination. Tr. 549. Plaintiff had normal gait, could squat and walk on heels and toes without any difficulty, she rose from a chair and the examination table without requiring any assistance, her joints were stable and nontender, her straight leg raises were negative, and there was no evidence of any abnormality on her thoracic spine. Tr. 548-49. Based on such generally unremarkable examination, Dr. Siddiqui opined that Plaintiff was mildly limited in her abilities to climb, push, pull, or carry heavy objects. Tr. 550.

Dr. Siddiqui's findings regarding Plaintiff's limitations were supported by the other evidence of the record. In fact, even though the record contains sufficient evidence suggesting that Plaintiff's neck and back symptoms were associated with a car accident that Plaintiff was involved in on April 16, 2013, and that such symptoms caused limitations in her ability to work, the record does not support Plaintiff's allegations of disabling symptoms. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (to determine claimant's RFC an ALJ must evaluate the claimant's subjective complaints and determine whether they are consistent with the record as a whole). While Plaintiff repeatedly complained about having severe muscle spasms or radiating neck and back pain to her treatment providers, none of them observed the severity that Plaintiff's back

impairment had on her ability to work. For instance, treatment records from Plaintiff's admission to the emergency room following the car accident suggest that Plaintiff's injuries sustained as a result of the accident were far from disabling. Even though Plaintiff was in the second trimester of pregnancy at the time of the accident and was admitted into the emergency room with abdominal and back pain, the emergency room treating doctor, after having examined Plaintiff and reviewed her x-rays, opined that Plaintiff's cervical and lumbar spine were normal, without any fractures, abnormalities in alignment, or narrowing of disc space. Tr. 525-28, 535-37. Plaintiff's fetus was healthy, and she was discharged the same day with instructions to follow up with her orthopedic providers. *Id.*

Treatment records of Plaintiff's orthopedic surgeon Dr. Simmons revealed that while Plaintiff had a reduced range of motion, some tenderness in her cervical and lumbar spine, and on one occasion a mildly positive Hoffman sign, she also demonstrated at other times full strength in her upper and lower extremities, normal posture and stable gait, symmetrical reflexes, negative Hoffman sign, and otherwise intact and neurologically normal appearance during her examinations. Tr. 588-89, 593-97, 603, 606, 609, 612. Notably, the course of treatment Dr. Simmons recommended to Plaintiff was very conservative. *See Penfield v. Colvin*, 563 App'x 839, 840 (2d Cir. 2014) (findings that conservative treatment weighed against a finding of disability). In fact, he never recommended that Plaintiff lessen any of her symptoms through surgery, did not prescribe any pain medication, agreed with Plaintiff receiving chiropractic treatment and massage therapy. Perhaps, the most invasive treatment option for Plaintiff's back condition that he suggested was periodic sacroiliac injections, which he successfully performed on numerous occasions. Tr. 588-89, 591, 593-97, 602-03, 606, 608-09, 611; *see Shaffer v. Colvin*, No. 1:14-CV-00745 (MAT), 2015 WL 9307349, at *5 (W.D.N.Y. Dec 21, 2015) (the ALJ properly

discredited the claimant's applications because her treatment was routine and conservative, and consisted of medication managements and physical therapy). Plaintiff continuously reported receiving relief and improvement of her symptoms following the injections and chiropractic treatment, *see Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (improvement with treatment was properly considered in concluding that claimant was not disabled), and ultimately stopped treating her back condition in January 2015 before returning to work in July 2015. Tr. 196-97, 657-01, 756.

Like Drs. Simmons and Siddiqui, Dr. Kaplan and his physician assistant Paul Olizarowicz, while noting Plaintiff's limited range of motion, stiffness, and allegations of pain in her neck and back, observed Plaintiff's normal reflexes, full strength in her upper and lower extremities, negative leg raises, and normal neurological examinations. Tr. 626-27, 633-36. Their prescribed course of treatment, similarly to Dr. Simmons, was for Plaintiff to continue physical therapy so that she could advance to home exercise program, sacroiliac injections, or possible radiofrequency ablation or prolotherapy treatments.[8] *Id.*

The Court also finds that the ALJ appropriately afforded limited weight to the opinion of Dr. Wild, whose findings were internally inconsistent and only partially consistent to the rest of the record. Dr. Wild found that Plaintiff had full muscle strength, normal reflexes and strength in her upper extremities, and was able to get onto the examination table without any assistance despite having complaints of tenderness in her neck and lumbar back. Tr. 642. Similar to Plaintiff's other

---

[8] Radiofrequency ablation is a procedure where an electric current is inserted into a small area of nerve tissue to stop it from sending pain signals. RADIOFREQUENCY ABLATION, https://my.clevelandclinic.org/health/treatments/17411-radiofrequency-ablation (last viewed Feb. 12, 2021). Prolotherapy treatment involves repeated injections of an irritant solution into a part of a joint, such as a tendon or ligament, to reduce pain, which in combination with spinal manipulations or back exercises can provide back pain relief. PROLOTHERAPY: SOLUTION TO LOW BACK PAIN? https://www.mayoclinic.org/prolotherapy/expert-answers/faq-20058347 (last viewed on Feb. 12, 2021). Plaintiff declined the prolotherapy treatment, but indicated that she would consider the radiofrequency ablation procedure. Tr. 636. The record is silent as to whether Plaintiff has ever underdone the radiofrequency ablation treatment.

9

treatment providers, Dr. Wild opined that Plaintiff should continue with conservative therapy, from she was receiving significant pain relief, and advised her to follow the treatment recommendations of Dr. Simmons. Tr. 638-44. However, despite making such conservative treatment recommendations, Dr. Wild also opined that Plaintiff would be unable to work irrespective of any restrictions. Tr. 644. Because such conclusion about Plaintiff's functional limitations was inconsistent with his observations of Plaintiff's limitations during the examination and his treatment suggestions, and because it was an opinion on the issue reserved to the sole discretion of the Commissioner, the ALJ properly afforded it limited weight. *See* 20 C.F.R. § 404.1527 (d)(1)-(3); *Monroe*, 676 F. App'x at 9 (the ALJ properly discounted a medical source opinion based on, among other things, the inconsistency of the physician's opinion with his treatment notes).

Plaintiff takes issue with the ALJ's references to her ability to care for an infant and a toddler during the period at issue citing *Iacobucci v. Comm'r of Soc. Sec.*, No. 1:14-CV-001260-GWC, 2015 WL 4038551 (W.D.N.Y. June 30, 2015) in support of her argument. ECF No. 12-1 at 20-22. However, Plaintiff's application of *Iacobucci* to the facts of this case is misplaced because while the Court in *Iacobucci* acknowledged that "an individual's ability to care for children may serve as evidence that she does not face certain limitations," it clearly determined that a claimant's "status as the child's mother *alone* is not evidence of non-disability." *Iacobucci*, 2015 WL 4038551, at *7 (emphasis added) (internal citations omitted). Here, the ALJ noted Plaintiff's ability to care for her two young children in the decision, but did not solely rely on it to deny Plaintiff's claim. Instead, the ALJ appropriately considered this factor in conjunction with Plaintiff's abilities to perform other daily activities, such as daily cooking and cleaning, weekly laundry, shopping, and driving without assistance. Tr. 24; *see* 20 C.F.R.§ 404.1529(c)(3)(i) (an

10

ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to read, drive, watch television, and do household chores supported ALJ's finding that his testimony was not fully credible). Additionally, the ALJ considered Plaintiff's complaints of increased back pain associated with her carrying an infant and toddler, and, as a result, limited Plaintiff to sedentary work, which requires lifting and carrying of up to ten pounds. 20 C.F.R. § 404.1567(a); *see also Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (an ALJ can look to all of the relevant medical and other evidence, including relevant medical reports, medical history, and the claimant's statements when assessing the RFC).

Although Plaintiff may disagree with the ALJ weighing of the evidence, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25 (2d Cir. 2018) (internal citations and quotations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (internal quotation marks omitted). Because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, Plaintiff has failed to meet her burden to demonstrate that she had a more restrictive RFC than determined by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC). Therefore, the ALJ reasonably determined that Plaintiff remained capable of performing sedentary work with specific functional

limitations identified in the RFC. Accordingly, the Court finds that the RFC determination is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is DENIED, and the Commissioner's motion for judgment on the pleadings (ECF No. 13) is GRANTED. The Commissioner's decision is AFFIRMED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: February 17, 2021
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court